STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 173-12-13 Vtec |

| | |
|---|---|
| Killington Resort Parking Project Act 250 Amend | ENTRY ORDER |

**Decision on Motion to Deny Party Status**

In this matter, Stephen Durkee, Mountainside Properties, Inc., Mountainside Development, Inc., Fireside Properties, LLC, and Killington Village Properties, Inc. (collectively, "Appellants") appeal the October 7, 2013 Findings of Fact, Conclusions of Law, and Land Use Permit (#1R0981) issued by the District # 1 Environmental Commission (the "Commission"), as well as the Commission's November 20, 2013 Altered Findings of Fact, Conclusions of Law, and Land Use Permit (#1R0981 (Altered)) regarding a resort parking project proposed by Killington/Pico Ski Resort Partners, LLC ("Applicant").[1] Applicant proposes to construct a day-skier parking lot for 1,276 vehicles to replace existing day-skier parking areas, realign a portion of Killington Road, reconfigure the Killington Grand Hotel parking lot, and construct a stormwater basin and associated utilities at its Act 250-permitted facility in Killington, Vermont (the "Parking Project"). The Parking Project proposal coincides with a master plan application by SP Land Company, LLC for substantial new construction at the resort which is the subject of a separate appeal before this Court, Docket No. 147-10-13 Vtec.[2]

Now pending before the Court is Applicant's motion to deny Appellants party status under certain Act 250 criteria. Applicant is represented by Christopher D. Roy, Esq., and Appellants are represented by Nathan Stearns, Esq.

---

[1] MTB Killington, LLC, AMSC Killington, LLC, and SP II Resort, LLC filed the initial application for the resort parking project, but subsequently transferred ownership to Killington/Pico Ski Resort Partners, LLC. Any further reference to Applicant shall apply to the current owner and applicant, Killington/Pico Ski Resort Partners, LLC.

[2] The Court notes that although the Commission consolidated its review of the Parking Project and the master plan application, the parties have agreed that Docket Nos. 173-12-13 Vtec and 147-10-13 Vtec should proceed on parallel but separate tracks and will therefore not be consolidated. See Pre-Trial Scheduling Order (Feb. 18, 2014).

**Factual Background**

For the sole purpose of putting the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1. On February 28, 2012, MTB Killington, LLC, AMSC Killington, LLC, and SP II Resort, LLC filed application #1R0981 with the Commission seeking approval of a new day-skier parking lot for 1,276 vehicles,[3] realignment of a portion of Killington Road, reconfiguration of the Killington Grand Hotel parking lot, and associated stormwater treatment at its Act 250-permitted facility in Killington, Vermont (the "Parking Project"). In the course of the Commission proceedings, project ownership was transferred to the current owner/Applicant, Killington/Pico Ski Resort Partners, LLC.

2. Appellant Stephen Durkee owns properties at 2134 Killington Road and 2023 Killington Road in Killington, Vermont. The property at 2134 Killington Road includes a single residence, and the property at 2023 Killington Road includes a market/office building and associated parking.

3. Mr. Durkee owns a controlling interest in Appellants Mountainside Properties, Inc., Mountainside Development, Inc., Fireside Properties, LLC, and Killington Village Properties, Inc. (collectively, the "Durkee Entities").

4. Appellant Mountainside Properties, Inc. ("MPI") owns properties located on East Mountain Road and on U.S. Route 4 in Killington, Vermont. Both MPI properties are undeveloped.

5. Appellant Mountainside Development, Inc. ("MDI") owns property at Mountainside Drive in Killington, Vermont. The MDI property is an undeveloped single residential lot within a subdivision.

6. Appellant Fireside Properties, Inc. ("Fireside") owns property at 1128 Killington Road in Killington, Vermont. The Fireside property includes a hunting lodge and associated cabins.

7. Appellant Killington Village Properties, Inc. ("KVP") owns commercial property at 923 Killington Road in Killington, Vermont.

---

[3] Applicant asserts that the new parking area is intended to replace existing parking areas and therefore will not constitute a source of new traffic. We understand that evidence will be presented by all parties on that assertion.

8.      Mr. Durkee resides at 337 Old Elbow Road in Mendon, Vermont.  Mr. Durkee regularly travels Killington Road in the area of the Parking Project in order to access the properties owned by the Durkee Entities.

9.      Appellants secured final party status from the Commission as summarized below:

| Appellants' Final Party Status, as Granted by the Commission | | |
|---|---|---|
| Appellant | Property | Criteria |
| Steve Durkee | 2134 Killington Road | 5, 9(K), 10 |
| Steve Durkee | 2023 Killington Road | 1(B), 1(D), 1(E), 4, 5, 9(K), 10 |
| Mountainside Properties, Inc. | East Mountain Road | 5, 8, 9(K), 10 |
| Mountainside Properties, Inc. | U.S. Route 4 | 5, 9(K), 10 |
| Mountainside Development, Inc. | Mountainside Drive | 5, 8, 9(K), 10 |
| Fireside Properties, LLC | 1128 Killington Road | 5, 9(K), 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 5, 9(K), 10 |

## Discussion

Appellants' January 13, 2014 Statement of Questions raises issues regarding Act 250 Criteria 1(E) (Streams), 5 (Traffic), 8 (Aesthetics), 9(K) (Public Investment), and 10 (Regional Plan).  In the pending motion, Applicant asks the Court to limit the party status of Mr. Durkee and the Durkee Entities as follows:

| Applicant's Assertion of Appellants' Proper Party Status | | |
|---|---|---|
| Appellant | Property | Criteria |
| Steve Durkee | 2134 Killington Road | 10 |
| Steve Durkee | 2023 Killington Road | 1(E), 10 |
| Mountainside Properties, Inc. | East Mountain Road | 8, 10 |
| Mountainside Properties, Inc. | U.S. Route 4 | 10 |
| Mountainside Development, Inc. | Mountainside Drive | 10 |
| Fireside Properties, LLC | 1128 Killington Road | 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 10 |

Thus, Applicant seeks to eliminate each Appellant's party status under Criteria 5 and 9(K) and to eliminate party status under Criterion 8 for all Appellants other than MPI.  In support of its motion, Applicant submitted the affidavit of Jeffrey Temple, Applicant's Director of Mountain Operations/Facilities Maintenance at the Killington Resort.  Applicant also attached a site plan showing the areas involved in constructing the Parking Project, a Google Earth aerial image noting the locations of properties owned by Mr. Durkee and the Durkee Entities, and four Google street view images purportedly facing toward the Parking Project from the respective Durkee properties.

Appellants oppose the motion with Mr. Durkee's affidavit, a list of Appellants' properties, and a property ownership map. In their opposition, Appellants assert that they are entitled to party status in this appeal as follows:

| Appellants' Party Status as Argued by Appellants | | |
|---|---|---|
| Appellant | Property | Criteria |
| Steve Durkee | 2134 Killington Road 2023 Killington Road | 1(E), 5, 8, 9(K), 10 |
| Mountainside Properties, Inc. | East Mountain Road U.S. Route 4 | 5, 8, 9(K), 10 |
| Mountainside Development, Inc. | Mountainside Drive | 5, 8, 9(K), 10 |
| Fireside Properties, LLC | 1128 Killington Road | 5, 8, 9(K), 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 5, 8, 9(K), 10 |

## I.      Standard of Review

Although not specifically framed as such, we view Applicant's request as a motion to dismiss particular Appellants as to certain criteria. V.R.E.C.P. 5(d)(2); see In re Granville Mfg. Co., Inc., No. 2-1-11 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin, J.) (noting that party status is a term of art indicating that a party is entitled to appeal a land use determination). The Court treats party status determinations as a preliminary issue of standing. See In re Champlain Parkway Act 250 Permit, No. 68-5-12 Vtec, slip op. at 4–6 (Vt. Super. Ct. Envtl. Div. Nov. 14, 2012) (Walsh, J.) (considering standing principles in determining party status).

Whether a party has standing affects this Court's subject matter jurisdiction. Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235. As such, we review the pending motion under the standard of review afforded by Rule 12(b)(1) of the Vermont Rules of Civil Procedure, which governs motions to dismiss for lack of subject matter jurisdiction. In re Goddard College Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.). Therefore, we accept as true all uncontroverted factual allegations and construe them in the light most favorable to the nonmoving party (here, Appellants). Id.; see also Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245 (describing standard of review for 12(b)(1) motion).

## II.      Party Status in an Act 250 Appeal

In an appeal from a district commission decision, an aggrieved person who (1) was granted party status by the district commission pursuant to 10 V.S.A. § 6085(c)(1)(E); (2)

4

participated in the proceedings before the district commission; and (3) retained party status at the end of the district commission proceedings "will be automatically accorded [party] status when the notice of appeal is filed unless the court otherwise determines on motion to dismiss a party." V.R.E.C.P. 5(d)(2); see 10 V.S.A. §§ 8504(a), (d)(1). The appellant's standing before the Environmental Division is limited to those Act 250 criteria for which the district commission granted final party status, unless the party appeals the denial of party status and the Court in turn grants party status. 10 V.S.A. § 8504(d)(1)–(2).

As detailed in V.R.E.C.P. 5(d)(2), an appellant who claims party status notwithstanding the district commission's denial "must assert that claim by motion filed not later than the deadline for filing a statement of questions on appeal." This "'mandatory directive requires strict compliance' and operates to put 'the parties and the Court on clear notice of the exceptional circumstances that warrant an appeal under § 8504(d)(2).'" In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Nov. 3, 2010) (quoting Verizon Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb. 2, 2010) (Durkin, J.)). Appellants here have not filed such a motion, and the deadline for filing the statement of questions has long passed. Therefore, Appellants' party status cannot exceed that which the Commission granted, as summarized on page 3 above. Moreover, because Applicant concedes MPI's party status as to Criterion 8, we only consider Appellants' party status as to Criteria 5 and 9(K) and MDI's party status as to Criterion 8.

To have standing in this Court as a "person aggrieved" by a district commission decision, an appellant must allege "an injury to a particularized interest" protected by Act 250 that is attributable to the decision and that can be redressed by this Court on appeal. 10 V.S.A. § 8504(a) and § 8502(7). First, as to Criteria 5 and 9(K), each Appellant must allege an interest protected by Act 250 that is particular to them, rather than a general policy concern shared with the public. In re Pion Sand & Gravel Pit, 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.). As to Criterion 8, MDI must allege such a particularized interest as well.

An interest may be particular to a party even if it is shared with multiple members of the general public. Re McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision, at 7 (Vt. Envtl.

5

Bd. Sept. 19, 2003) (noting the irrelevance of other individuals being similarly affected by a development as long as the impacts on the parties are "particular to them, concrete, and [are not impacts] affecting the common rights of all persons"). Second, each Appellant must show a reasonable possibility that the Commission decision on the Parking Project may affect its particularized interest. In re Bennington Wal-Mart Demolition/Constr. Permit, 158-10-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.). We have rejected the application of any "heightened evidentiary standard, more akin to a merits review" when considering a party's standing. Id. at 10 n. 5. Finally, we note that the parties do not dispute whether any injury Appellants may experience could be redressed by a favorable decision from this Court.

Guided by these requirements, we consider Appellants' standing under Criteria 5, 8, and 9(K). In doing so, we consider only the application before us in this matter, Docket No. 172-12-13 Vtec, for the Parking Project. Although the Court recognizes that the master plan application in Docket No. 147-10-13 Vtec is related to the Parking Project, it is the subject of a separate appeal and we treat it accordingly.

### a. Criterion 5 (Traffic)

Question 2 of Appellants' Statement of Questions relates to Criterion 5:

2. Whether under 10 V.S.A. § 8086(a)(5) the Parking Project will create unreasonable congestion or unsafe conditions with respect to the use of highways and other means of transportation, including congestion or unsafe conditions, *inter alia*, due to (a) the volume of traffic that will be created by the project, and/or (b) the operation of a shuttle bus service and the interaction of that service with pedestrians.

Criterion 5 requires that a project will not result in "unreasonable congestion or unsafe conditions with respect to use of the highways, waterways, railways, airports and airways, and other means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5). In determining party status regarding Criterion 5, "'the relevant inquiry is whether the petitioner uses the roads that may be impacted by a project on a regular basis.'" In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 14 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.) (quoting Re:

6

Pike Indus., Inc., No. 5R1415-EB, Mem. of Decision, at 2 (Vt. Envtl. Bd. Nov. 19, 2004)).  In Pike Industries, the former Environmental Board explained:

> A project may cause a hazardous condition or congestion at a point some distance from the actual project site or the petitioner's home; conversely, a person may live immediately adjacent to a proposed project but never drive the roads that the project will use.  Therefore, the location of a petitioner's residence is only one factor that may be relevant to a consideration of party status under Criterion 5, to the extent that it demonstrates that the petitioner's use [of] the roads may be impacted on a regular basis and that the petitioner may thus experience impacts that differ from those experienced by the public in general.

Pike Indus., No. 5R1415-EB, at 2.

Mr. Durkee's properties at 2134 Killington Road and 2023 Killington Road are located 1.1 miles and 1.2 miles, respectively, northeast of the proposed lot for the Parking Project. (Temple Aff. at ¶ 12, filed Mar. 3, 2014).  He also owns a controlling interest in the entities that own five other properties within an approximately two-mile radius of the proposed lot, including two other properties on Killington Road and two properties on East Mountain Road, which intersects with Killington Road just south of the proposed parking lot.

Applicant argues that Mr. Durkee should be denied party status under Criterion 5 because he will experience an impact similar to the impact on the general public.  In support of his party status under Criterion 5, Mr. Durkee states that in order to access the various properties in which he owns an interest, he regularly travels on Killington Road and East Mountain Road, through the intersection of these two roads.  In driving through this area, Mr. Durkee travels past the area that will be used for access to and egress from the new parking lot and over the portion of Killington Road that is proposed to be realigned as part of the Parking Project.  Mr. Durkee does not state the purpose or frequency of his visits to each of his properties or the Durkee Entities' properties.  Because we are directed to take any uncontroverted factual allegations as true, however, we assume that Mr. Durkee regularly travels this route and construe this fact in the light most favorable to him.  We therefore find that Mr. Durkee has made a showing, adequate for provisional standing, that his interest in the traffic conditions is sufficiently particularized.

7

In addition, Appellants allege that the proposed relocation of 1,276 parking spaces to north of the intersection of Killington Road and East Mountain Road and the realignment of Killington Road will "introduce a significant number of new turning movements" and "create new traffic congestion" in this area. Neither party has provided specific information on the possible increases in traffic and adverse traffic impacts that the Parking Project and roadway realignment may cause, particularly in terms of number of vehicles, wait times, or turning movements. Moreover, we recognize Applicant's argument that the Parking Project is proposed to replace an existing parking lot south of the Killington Road and East Mountain Road intersection, and that resulting parking capacity may be similar to current capacity. Nevertheless, considering the Parking Project involves construction of a parking lot for 1,276 vehicles and the realignment of Killington Road, we find that Mr. Durkee's allegation that the Parking Project will result in additional turning movements and increased traffic congestion is sufficient to establish a reasonable possibility that the Parking Project could harm his particular interests. Thus, Applicant's motion to deny Mr. Durkee party status as to Criterion 5 is **DENIED**, and we provisionally grant Mr. Durkee party status under Criterion 5. The provisional nature of this grant is a result of the minimal factual information before the Court regarding how regularly and for what purpose Mr. Durkee uses the roads at issue. Depending on further factual presentation, it may be that Mr. Durkee cannot establish even a reasonable possibility that any interest he has may be affected by the Parking Project. However, viewing the facts before the Court most favorably to Mr. Durkee, we cannot say that his claims under Criterion 5 should be dismissed at this time.

As to the Durkee Entities, the Court is left to guess who uses these respective properties. It is also unclear to the Court how the Durkee Entities have a particularized interest in traffic congestion or unsafe conditions in the area of the Parking Project. Other than Mr. Durkee's regular use of the roads to access these properties, Appellants do not allege that the entities regularly use the roads at issue. Because we do not know the purpose of Mr. Durkee's visits to the properties, we cannot say that his use of the roads shows that each of the Durkee Entities also has a particularized interest in the use of the roads. Rather, on the record before us, the Durkee Entities' interest in traffic impacts is more likely based on the speculation that

8

"relocation of the parking will negatively impact [Appellant Stephen Durkee and] all of Appellants' properties." (Appellants' Response in Opp. To Appellee's Mot. to Deny Party Status at 7, filed Mar. 18, 2014.) Without information regarding the Durkee Entities' use of the route at issue, we are unable to conclude that the Durkee Entities have a particularized interest under Criterion 5 that may be affected by a decision on the Parking Project.

For the reasons discussed above, Applicant's motion to deny party status under Criterion 5 as to Mr. Durkee is **DENIED**, and we provisionally grant Mr. Durkee party status under Criterion 5. Applicant's motion to deny party status under Criterion 5 as to the Durkee Entities is **GRANTED**.

### b. Criterion 8 (Aesthetics)

Questions 4, 5, and 6 of Appellants' Statement of Questions relate to Criterion 8:

4. Whether the Parking Project will have an undue adverse effect on the scenic or natural beauty of the area, or aesthetics, under 10 V.S.A. § 6086(a)(8).

5. Whether the scale and location of the Parking Project and associated developments are shocking and offensive to the average person such that the Parking Project will have an undue adverse effect on the scenic or natural beauty of the area, or aesthetics, under 10 V.S.A. § 6086(a)(8).

6. Whether the applicant has failed to take generally available mitigating steps to minimize the impact of the Parking Project such that the Parking Project will have an undue adverse effect on the scenic or natural beauty of the area, or aesthetics, under 10 V.S.A. § 6086(a)(8).

Criterion 8 requires that a project "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). "[W]hile generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or <u>even the mere aesthetic interests</u> of the plaintiff, that will suffice." <u>In re Champlain Marina, Inc., Dock Expansion</u>, No. 28-2-09 Vtec, slip op. at 6 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.) (quoting <u>Summers v. Earth Island Inst.</u>, 55 U.S. 488, 494 (2009) (emphasis added).

Appellants allege that MDI's property on Mountainside Drive has a view of the Parking Project area. Appellants also allege that the Parking Project will result in loss of forest cover, construction of parking lots, and likely noise pollution, all of which will impact all of the Durkee Entities' properties.

9

Although Applicant asserts that the MDI property does not have a "direct view" of the Parking Project area, we find that it has failed to rebut Appellants' assertion that MDI's property does have some view of the area.[4] We therefore accept Appellants' assertion as to the view as true, and conclude that MDI has a particularized interest that may be impacted by the proposed project. We are at a loss, however, to understand the aesthetic impacts upon Mr. Durkee, the remaining Durkee Entities, or their respective properties, particularly since none of these parties (except for MDI) have asserted that the Parking Project may be viewed from their respective properties, or that they will experience some other specific aesthetic impact caused by the Parking Project. We therefore conclude that Applicant's motion challenging their party status under Act 250 criterion 8 must be **GRANTED**.

For these reasons, Applicant's motion to deny party status under Criterion 8 as to MDI is **DENIED**. Applicant's motion to deny party status to Mr. Durkee (as to both properties he owns in his individual name), MPI, Fireside, and KVP is **GRANTED**.

### c. Criterion 9(K) (Public Investments)

Questions 3 and 8 of Appellants' Statement of Questions relate to Criterion 9(K):

3. Whether under 10 V.S.A. § 6086(a)(9)(K) the Parking Project will unnecessarily or unreasonably endanger the public or quasi-public investment in, or materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to public roadways, including due, *inter alia*, to (a) the volume of traffic that will be created by the project, and/or (b) the operation of a shuttle bus service and the interaction of that service with pedestrians.

8. Whether the Parking Project will materially interfere with the public's use or enjoyment of or access to portions of the Calvin Coolidge State Forest, under 10 V.S.A. § 6086(a)(9)(K).

Criterion 9(K) directs the granting of a permit for a development on or adjacent to public lands upon a demonstration that the development "will not unnecessarily or unreasonably endanger the public or quasi-public investment" in the lands or "materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to" the lands. 10 V.S.A. § 6086(a)(9)(K). This Criterion "seeks to protect state and local

---

[4] Although Applicant purportedly attached images of the "views" from each property, we find them unhelpful without more specific points of reference.

governments from adverse fiscal impacts on public facilities and investments that are adjacent to the proposed project." Re: St. Albans Grp. & Wal-Mart Stores, Inc., No. 6F0471-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 15, 1994). Regarding traffic, Criterion 9(K) requires a person seeking party status to make a higher showing of an interest than Criterion 5 requires. In re North East Materials Grp., LLC, Amended Permit, No. 35-3-13 Vtec, slip op. at 10 (Vt. Super Ct. Envtl. Div. Aug. 21, 2013) (Walsh, J.) (citing Van Sicklen Ltd. P'ship, No. 4C1013R-EB, Mem. of Decision, at 8 (Vt. Envtl. Bd. June 8, 2001)).

Appellants argue that they have a particularized interest under Criterion 9(K) because "[t]he proposed relocation of the parking proposed in the current matter will introduce a significant number of new turning movements, will create new traffic congestion, and will jeopardize and interfere with the function, efficiency, safety, and the use and enjoyment of the roads in an area and on roads used daily by Appellants and their guests and invitees." (Appellants' Response in Opp. To Appellee's Mot. to Deny Party Status at 8, filed Mar. 18, 2014.) Mr. Durkee's affidavit introduces no additional factual allegations other than his specific use of Killington Road and East Mountain Road to access the Durkee and Durkee Entities properties. Thus, Appellants make no showing beyond that which Criterion 5 requires, and Appellants provide no factual basis for the allegation that the Parking Project will "jeopardize and interfere with the function, efficiency, safety, and the use and enjoyment of the roads in an area and on roads used daily by Appellants and their guests and invitees." Id. Thus, Appellants have not alleged a reasonable possibility of harm to an interest related to traffic under Criterion 9(K) that is particular to them, rather than an interest shared with the general public.

Mr. Durkee further alleges that he has a particularized interest under Criterion 9(K) because he routinely accesses the Calvin Coolidge State Forest through an existing parking lot which the Parking Project will replace. While Mr. Durkee may be required to use a different ingress and egress for the state forest, he fails to demonstrate a reasonable possibility that the parking lot replacement will materially jeopardize or interfere with the state forest or his use of it.

For these reasons, Applicant's motion to deny Appellants party status as to Criterion 9(K) is therefore **GRANTED**.

11

## Conclusion

In the course of reviewing the pending motion, we concluded that our determinations would best be expressed in a table format similar to those used above. We therefore summarize our determinations on the pending motion in the table below. As discussed above and reflected in this table, Applicant's motion to deny party status is **GRANTED** in part and **DENIED** in part.

### Party Status Table

| Appellants' Party Status before the Environmental Division | | |
|---|---|---|
| **Appellant** | **Property** | **Criteria** |
| Steve Durkee | 2134 Killington Road | 5 (provisional), 10 |
| Steve Durkee | 2023 Killington Road | 1(E), 5 (provisional), 10 |
| Mountainside Properties, Inc. | East Mountain Road | 8, 10 |
| Mountainside Properties, Inc. | U.S. Route 4 | 10 |
| Mountainside Development, Inc. | Mountainside Drive | 8, 10 |
| Fireside Properties, LLC | 1128 Killington Road | 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 10 |

Now that the Court has addressed all pending motions, we also separately issue a final pre-trial Revised Scheduling Order. This appeal, Killington Resort Parking Project, No. 173-12-13 Vtec, is scheduled for trial to begin on October 29, 2014. The related appeal, Killington Village Master Plan, No. 147-10-13 Vtec, is scheduled for trial to begin on December 1, 2014. The parties are directed to plan accordingly.

Electronically signed at Newfane, Vermont on August 05, 2014 pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

12